In re Andrew Thomas HUMPHREY
and Michelle Diane Humphrey,
Debtors.

No. 03–21232.

United States Bankruptcy Court,
W.D. Missouri.

May 20, 2004.

Noel Bisges, Jefferson City, MO, for
Debtors.

## MEMORANDUM OPINION

DENNIS R. DOW, Bankruptcy Judge.

The matter before the Court in this Chapter 13 proceeding is the motion of Show Me Credit Union ("Show Me") for relief from the automatic stay to repossess and dispose of a 1997 Ford Taurus securing its claim against the Debtors. Show Me seeks relief from stay on the grounds that the Debtors lack equity in the collateral and it is not necessary to an effective reorganization and for the reason that Show Me is not adequately protected, as it is not receiving post-confirmation payments pursuant to the Debtors' confirmed Chapter 13 plan. Debtors argue that the stay should not be lifted because they require the vehicle as a means of transportation to and from their employment and that the reason Show Me is not receiving payments under the plan is that it failed to file a timely claim. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(G). For the reasons set forth below, the Court denies Show Me's motion for relief from automatic stay.

## I. BACKGROUND

Debtors filed this Chapter 13 proceeding on May 23, 2003. On Schedule D on their Schedules of Assets and Liabilities, Debtors listed a claim to Show Me in the amount of $5,383 secured by a lien on their 1997 Ford Taurus, which they value at $4,000. The Taurus is apparently the Debtors' only vehicle, it being the only one listed on Schedule B, the Debtors' schedule of personal property. In their proposed Chapter 13 plan, also filed on May 23, 2003, the Debtors provide for Show Me's claim, specifying that Show Me is to retain its lien with its secured claim of $4,000 to be paid on a pro rata basis from the payments made by the Debtors to the Chapter 13 Trustee at the prevailing local Chapter 13 rate of interest. The Debtors' plan is a base plan, running for a period of 40 months. The Court entered an order confirming the proposed plan on August 13, 2003.

Shortly after the filing of the case, on May 27, 2003, the Court issued an order establishing September 15, 2003 as the date by which creditors must file claims. That date was later amended to October 16, 2003. Subsequent to the expiration of the claims bar date, the Chapter 13 Trustee, as is the practice in this district, sent a notice dated October 20, 2003 regarding the status of claims, specifying those claims which would be paid (and the proposed treatment of those claims) and which were not proposed to be paid, as a result of not having been filed. The notice specified that unless a response was filed within 30 days from the date of issuance of the notice, the claims would be allowed or disallowed as proposed. The claim of Show Me was identified as not having been filed and therefore to be disallowed for that reason. No response to the motion was filed on Show Me's behalf.

On February 10, 2004, Show Me filed a motion for authorization to file its claim out of time and, on February 12, 2004, filed a Proof of Claim, to both of which Debtors objected. At a hearing held on March 11, 2004, the Court considered both the objection to the claim and the motion for authorization to file out of time. The Court denied the motion and sustained Debtors' objections for the reason that the Court lacked the power, in a Chapter 13 proceeding, to extend the bar date for filing claims on a motion filed subsequent to the expiration of the bar date.

In the meantime, however, Show Me had filed its motion for relief from auto-

matic stay, the request presently before the Court.

## II. DISCUSSION AND ANALYSIS

■ In its post-hearing brief in support of the motion, Show Me argues both that it has standing to make the request because its lien survived the confirmation of the Chapter 13 plan and that there exists cause for granting the motion. Show Me asserts that it need not file a claim and may satisfy its claim outside of the bankruptcy proceeding by enforcement of its lien. It also argues that it is not "provided for" by the Chapter 13 plan because it is not receiving payments under the confirmed plan. Show Me argues that for that reason, title to the collateral did not revest in the Debtors free and clear of its claim and lien. Show Me contends that its interest in the collateral is not adequately protected for the reason that it has not received a payment from the Debtors or the Chapter 13 Trustee in six months. It also asserts that there is no equity in the collateral and that it is not necessary for an effective reorganization.

■ Show Me clearly has standing to seek relief from the automatic stay as the holder of a lien on the vehicle. That lien survived confirmation of the Debtors' Chapter 13 plan and remains enforceable. Pursuant to 11 U.S.C. § 1327(b), confirmation of the plan vests property of the estate in the debtor unless the plan or confirmation order provides otherwise. Neither the plan nor the order of confirmation does so in this case. Similarly, pursuant to § 1327(c), unless the plan or the confirmation order provides otherwise, the property vesting in the debtor is free and clear of claims or interests provided for in the plan. In this case, however, the plan does provide otherwise, specifically stating that Show Me retains its lien. Show Me argues it is not "provided for" because it is not receiving payments, presumably in order to avoid the effect of § 1327(c). For the reason noted, however, that argument is unnecessary in this instance.[1]

■ Show Me argues it need not file a claim and may seek to enforce its lien for the satisfaction of its claim. While this proposition is true, it is subject to certain limitations. First, Show Me does have to file a timely claim in order to obtain a distribution from the confirmed plan, as this Court has previously held. *In re Griggs*, 306 B.R. 660, 664 (Bankr.W.D.Mo. 2004); *see also, In re Zich*, 291 B.R. 883

---

1. If the argument were not unnecessary, it would be rejected as being without merit. In *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), the United States Supreme Court broadly defined the phrase "provided for" to mean that a Chapter 13 plan simply "makes a provision" for, "deals with" or "refers to" a claim. *Rake*, 508 U.S. at 473–474, 113 S.Ct. 2187. The plan in this case clearly does that. The fact that the secured creditor may not be receiving payments under the plan, particularly where that is the result of the secured creditor's own failure to file a timely claim, has no bearing on whether the claim is "provided for." K. Lundin, Chapter 13 Bankruptcy, § 242.1, p. 242–13 (3d ed.2002). *See also*, Lundin at § 234.1, pp. 234–16 to 234–17 ("Some of the reported decisions seem to hold that one element of providing for a creditor for purposes of § 1327(c) is that the creditor must file a proof of claim or, at least, that a proof of claim is filed on behalf of the creditor. The history and resulting structure of the Code amply demonstrate that Congress did not intend that creditor action such as the filing of a proof of claim is required to trigger the effects of confirmation under § 1327(c). The filing of a proof of claim by or for a secured claim holder is the predicate to allowance of a claim under §§ 501 and 502 and to participation in distributions under the plan; the filing of claims has nothing whatsoever to do with the effects of confirmation under § 1327. As clearly stated in § 1327(a), the confirmed plan binds all claim holders without regard to whether they file proofs of claim.")

(Bankr.M.D.Ga.2003). Failure to file a claim does not, however, affect the validity of Show Me's lien, which survived confirmation pursuant to the provisions of the plan itself and may be enforced after discharge. The Debtors concede as much in their brief in opposition to the motion for relief automatic stay, arguing not that the lien has been extinguished, but rather that Show Me should not be granted the relief from automatic stay to enforce it under the circumstances of the case. In the meantime, however, Show Me is prohibited from enforcing its lien by the automatic stay. *In re Hebert,* 61 B.R. 44, 46 (Bankr. W.D.La.1986) ("It is also true that a lienholder may generally look to his lien for satisfaction of a debt, and not file a proof of claim in bankruptcy. To that extent, the creditor may 'ignore' the bankruptcy proceedings ... That does not entitle the creditor to ignore the automatic stay imposed by Section 362 of the Code. Subsection 362(d) provides the only mechanism whereby a creditor may obtain relief from the automatic stay."); *Ford Motor Credit Co. v. Lewis (In re Lewis),* 8 B.R. 132, 137 (Bankr.D.Idaho 1981) ("Congress intended a Chapter 13 debtor to have the protection of the stay during the term of the plan, at least from creditors who are provided for in the plan.") The issue, therefore, is whether the stay should now be lifted.

■ Show Me argues that there is no equity in the vehicle and it is not necessary for an effective reorganization, entitling it to relief from automatic stay under § 362(d)(2). The Court agrees the record shows that there is no equity in the vehi-

cle. The amount owed is $5,307.26 according to the motion, which Debtors do not seem to dispute. The scheduled value of the vehicle is $4,000. By the Debtors' own admission, therefore, there is no equity in the vehicle. Debtors contend, however, that this is their only vehicle, they need it to provide them with transportation to and from employment and it is thus essential to the generation of income needed to consummate the plan. Most courts have held that, in this circumstance, the vehicle is necessary for an effective reorganization. *See, e.g., In re Huffman,* 2002 WL 32116805 (Bankr.E.D.Ark.2002) (held vehicle necessary to reorganization because debtor's only vehicle to travel to and from work); *In re Kowalsky,* 235 B.R. 590, 595 (Bankr.E.D.Tx.1999). This Court feels likewise.[2]

Movant also contends it is entitled to relief from the stay for cause, including a lack of adequate protection. In this case, cause would flow from the lack of payments received by Show Me, which is a direct result of Show Me's failure to file a timely claim. The leading treatise on Chapter 13 suggests these circumstances would not give the lienholder good grounds for obtaining relief. K. Lundin, Chapter 13 Bankruptcy § 288.1, p. 288–5 (3d ed.2002) ("Few courts will grant relief from the stay when the confirmed plan provides for payment of a secured creditor and the claimholder disables itself from receiving payments by failing to file a proof of claim.")

In *In re Schaffer,* 173 B.R. 393 (Bankr. N.D.Ill.1994), the court dealt with the

<hr/>

2. In addition, the Court does not believe that subsequent to confirmation, a secured creditor may obtain relief from the automatic stay under § 362(d)(2) as long as it is provided for by the plan and the debtor is making the payments required by the plan. *In re Matthews,* 229 B.R. 324, 328 (Bankr.E.D.Pa.1999) ("confirmation of a plan basically eliminates

any argument that relief is appropriate under § 362(d)(2)"); *Anaheim Savings & Loan Ass'n v. Evans (In re Evans),* 22 B.R. 980, 982 (Bankr.S.D.Cal.1982), *aff'd,* 30 B.R. 530 (9th Cir. BAP 1983) ("Where a confirmed plan provides the means to cure a default on a secured obligation, § 1327(a) must be read literally to defeat a § 362(d)(2) complaint.")

question of whether a secured creditor is required to file a claim to participate in a Chapter 13 plan and, if so, whether it was bound to do so at any particular time. The court answered both questions in the affirmative and, in the process, commented on the options open to the creditor in the event its claim is disallowed as untimely:

> The dilemma in which Bank One finds itself is this: if the admittedly late filed claim is disallowed, the debtor may be able to retain the collateral, a 1993 Nissan truck, throughout the administration of the case and Bank One will have to await the closing of the case before pursuing its remedies, (if at that time there are any meaningful remedies to pursue). Or, of course, Bank One could move to vacate the stay for cause. *Cause would not likely flow from an omission (the late filing) by the party seeking relief from the stay.*

*Schaffer,* 173 B.R. at 395 (emphasis added).

The same can be said for the claim that relief from stay should be granted on grounds of lack of adequate protection. The reason Movant is not adequately protected is that it is not receiving payments. The reason Movant is not receiving payments is that it failed to file a timely claim. In a decision involving issues very similar to those in *Schaffer,* the court in *In re Macias,* 195 B.R. 659 (Bankr.W.D.Tex. 1996), also commented on the implications of its holding:

> ... a secured creditor cannot simply absent itself from the bankruptcy process in Chapter 13, and hope to obtain easy relief from the automatic stay after confirmation. Such a creditor could hardly maintain that cause existed for relief from stay where the debtor had made provision for the creditor in the plan and only the creditor's refusal to file a claim prevented it from receiving

the adequate protection that had been offered.

.　　.　　.　　.　　.

> If a secured claim is untimely filed, the Trustee is entitled (perhaps even obligated) to object to its filing as untimely. Such disallowed claims will not be entitled to any distribution under the plan, nor will the creditor's failure to timely file permit the [sic] to later argue a lack of adequate protection.

*Macias,* 195 B.R. at 662 n. 5 and 663.

Show Me cites two cases for the proposition that it should be entitled to relief to repossess and dispose of the Debtors' vehicle: *Southtrust Bank of Alabama v. Thomas (In re Thomas),* 91 B.R. 117 (N.D.Ala.1988), *aff'd,* 883 F.2d 991 (11th Cir.1989); *In re Lee,* 182 B.R. 354 (Bankr.S.D.Ga.1995). In both cases, the courts granted a motion for relief filed by a secured creditor not receiving payments under the plan on grounds of lack of adequate protection. In both cases, the creditors had failed to file timely proofs of claim.

The Court believes the *Thomas* case is distinguishable, at least in part. In *Thomas,* the result seems to have been influenced in part by the court's view that the creditor was deprived of the right to assert its claim by an administrative procedure that it considered misleading and unfair and had since been revoked. *Thomas,* 91 B.R. at 120–121.

To the extent the holdings in these cases are applicable in this situation, the Court declines to follow them. As noted above, the creditor's lack of adequate protection is in this case self-inflicted. The Court thinks it inappropriate to punish the Debtors for the creditor's failure to protect its interest by filing a timely claim.

Debtors argue that to grant Show Me the relief it seeks would be to give secured

creditors the power to opt out of the plan and circumvent the requirements of the Bankruptcy Code and Rules. This Court agrees. The opinion in *Thomas* has been criticized for precisely that reason:

> ... *Thomas* demonstrates that without the binding effect, creditors that are not provided for to their liking can ignore the Chapter 13 case and sabotage the rearrangement effort by relief from the stay after confirmation.
>
> .     .     .     .     .
>
> Granting post-confirmation relief from the stay based on a creditor's choice to forgo distributions under the plan is a dangerous distortion of the Code. *Thomas* means that a creditor can control the effect of confirmation on relief from stay by simply declining to file a proof of claim. This permits claim holders to avoid the statutory mandate in § 1327(a) by the simple expedient of neglecting to file a proof of claim.

Lundin at § 242.1, pp. 242–11 and 242–13.

It is true that the claim, although untimely, would not have been disallowed if Debtors had not objected to it. 11 U.S.C. § 502(a) (filed claim deemed allowed unless objected to); Local Rule 3084–1[I] (all claims allowed as filed absent timely objection by debtor; paid according to notice allowing claim). The Debtors would be placed in an untenable situation, however, if Show Me's position prevailed. A secured creditor could deliberately wait until after the bar date to file a claim and put the Debtor in the position of either objecting to the claim and thereby creating grounds for relief from the automatic stay and risk losing his or her property or allowing the secured creditor to be paid despite not having filed a timely claim. Because the Debtor is presumably committing all his or her disposal income to plan payments, no additional funds would be available to make an adequate protection payment to prevent relief from stay being granted. If the claim is filed too long after confirmation, allowing the claim can create serious problems for the Debtor. The Debtor might either increase the plan payments to retire the claim within the time frame of the existing plan or amend the plan to extend its length. The former option will likely not be available for the reason just noted. Extending the length of time over which payments would be made under the plan might, however, in a case like this one in which the plan already extends for 55 months, be prohibited by the provision on maximum plan length contained in 11 U.S.C. § 1322(d). In addition to creating this Hobson's choice for debtors, this rule would encourage sloppy practice among secured creditors. While it is true that a debtor might avoid this result by filing a claim for the secured creditor, which the debtor would be authorized to do under Rule 3004 of the Federal Rules of Bankruptcy Procedure, this places the obligation for protecting the rights of the secured creditor upon the debtor rather than the creditor, where, it seems to the Court, it does not belong. The Court recognizes that the result of denying the motion may be that the Debtors will be able to continue to use the vehicle during the term of the plan while Show Me receives no payments and that there is some inequity in that. There is also inequity, however, in permitting Show Me to deprive the Debtors of the vehicle for a failure to receive payments resulting from its own failure to protect its rights by filing a timely claim.

## III. CONCLUSION

For the reasons cited above, the Court denies Show Me's motion for relief from automatic stay. Even if entertaining a motion for relief from automatic stay post-confirmation on § 362(d)(2) grounds is ap-

propriate, the Court believes those grounds are not established. Although there is no equity in the property, it appears to be necessary for the Debtors' performance under their confirmed plan. Show Me has failed to establish cause for relief from automatic stay including a lack of adequate protection, for the reason that it lacks adequate protection solely because it has disabled itself from receiving payments as a result of failing to file a timely claim.

This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law as required by Rule 9014(c) and Rule 7052 of the Federal Rules of Bankruptcy Procedure. A separate order will be entered as required by Rule 9021.